**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**LEWIS PATTERSON**                                                                              **PLAINTIFF**

**VS.**                                                  **CIVIL ACTION NO. 3:19-CV-616-HTW-LRA**

**JOHN DOE, MDOC MEDICAL**
**AND DR. WILLIAM BRAZIER**                                                            **DEFENDANTS**

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

This matter is before the Magistrate Judge on Defendant Dr. William Brazier's

Motion for Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative

Remedies [23].   Plaintiff Lewis Patterson's claims are based upon his assertion that he

was tested for HIV and syphilis in 2013 while he was in the custody of the Mississippi

Department of Corrections [MDOC] and housed at the Central Mississippi Correctional

Facility [CMCF] in Pearl, Mississippi.   Patterson alleges that the medical officials did

not let him know he had HIV and syphilis and refused to treat him.   He was housed at

CMCF, and then at the Wilkinson County Correctional Facility [WCCF] and then back at

CMCF.   According to Plaintiff, all of the medical personnel at these facilities kept telling

him nothing was wrong with him, but he kept getting sicker and sicker.   Plaintiff claims

that this failure to treat him continued for a long time; they kept telling him that he does

not have HIV and syphilis, even though he has internal bleeding and his HIV has now

turned into full-blown AIDS.

1

In support of his motion, Dr. Brazier attached copies of the Administrative

Remedy Program [ARP] grievances that Plaintiff filed while housed at WCCF and

CMCF.   He also attached MDOC Inmate Handbook Chapter VIII, which outlines the

ARP.   The grievance files were authenticated and include all of the proceedings.

Plaintiff was directed to file a written response to the motion on or before September 21,

2020 [30].   He failed to do so.   His only response has been to file a copy of his Request

for Administrative Remedy [26].

As discussed *infra*, Plaintiff filed two relevant grievances.   The first was filed at

WCCF—where Dr. Brazier did not work.   The second grievance was filed at CMCF

where Dr. Brazier did work.   Thus, the discussion focuses on the only grievance

applicable to Dr. Brazier, the only Defendant.

The bases for the Defendant's Motion for Summary Judgment are:   Plaintiff

failed to name Dr. Brazier in his grievance or to complain about Dr. Brazier's conduct, so

he was not sufficiently specific; and, he filed this lawsuit before he completed the

administrative remedy process.   Defendant charges that Plaintiff's failure to see the ARP

process through to its conclusion before filing suit is fatal.   For the reasons set out more

fully below, the Magistrate Judge recommends that the Motion for Summary Judgment

be granted.

To defeat a summary judgment motion, Plaintiff must rely on specific evidence in

the record and articulate the precise manner in which that evidence supports his claims.

*Stults v. Conoco, Inc.,* 7 F.3d 651, 656 (5th Cir. 1996).   He cannot rely on

unsubstantiated, conclusory assertions or merely present a scintilla of evidence.    *Fiesel v. Cherry,* 294 F.3d 664, 667 (5th Cir. 2002), *citing Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).   In response to the motion, Plaintiff has only filed copies of the grievances that he did file.   He presents no opposing evidence showing that he completed the process prior to filing the Complaint in this case.

The Mississippi Department of Corrections has an Administrative Remedy Program that applies to prisoners [23-4].   The initial complaint, or First Step, should be in the form of a letter from the inmate, written within thirty days after an incident has occurred.   A response should be made within forty days from the date that the First Step request is received.   Expiration of that response time entitles the inmate to move to the next step in the process.

According to the ARP records presented by Defendant, Patterson filed three grievances related to his medical care during this time period, and only two of these relate to his claims in this case.   He filed WCCF-19-182 on March 9, 2019, while housed in WCCF.   [23-1].   According to the ARP, he was not receiving proper medical treatment for his syphilis and had not seen a doctor about his disease.   The ARP was accepted for review on April 8, 2019.   Ten days later, a prison official, "Nathaniel Reed," executed the First Step Response, noting that Dr. Burke had reported that Plaintiff's lab work was negative for syphilis.   [23-1, p. 5].   While this ARP was being processed, Patterson was moved to CMCF.   The ARP was received at CMCF on May 16, 2019, and Plaintiff signed the First Step Response on May 23, 2019.   *Id.*   He was not satisfied with the

response, stating that he was dying and that he needed help with his syphilis condition that was "killing [me] slowly."    *Id.*    On August 12, 2019, Dr. Burke executed the Second Step Response, explaining that Plaintiff does not have syphilis as an active disease and that there was "no medical indication for treatment."    [23-1, p 6].    The WCCF grievance was again returned to CMCF on August 14, 2019.    Plaintiff signed for the Response on August 21, 2019; he signed the Complaint filed in this case on August 15, 2019.    [1, p. 12].    The Complaint was actually received and filed with the Clerk of the Court in this case on August 29, 2019.    Dr. Burke has not been named as a Defendant in this cause; Dr. Brazier was not employed at this facility so this grievance could not be relevant to him.

While WCCF-19-182 was still pending, Plaintiff filed CMCF-19-1279, [23-2] on June 2, 2019.    He again alleged that he was not receiving proper medical treatment for AIDS and syphilis while housed at CMCF and treated by Dr. Brazier.    According to Patterson, he suffered from internal bleeding and the medical employees kept denying his serious condition.    CMCF-19-1279 was accepted for review on June 7, 2019, and Dr. Brazier issued a First Step Response on June 28, 2019.    His response was: "We strive to provide you with the best medical care.    Upon review of your medical record you were seen by a provider recently.    Any further health issues please submit a sick call request." [23-2, p. 9].    Plaintiff signed for that response on July 25, 2019 and noted his dissatisfaction, requesting a Second Step review.    *Id.*    According to Plaintiff, he wanted to proceed to Step Two because he "still [has] this illness that killing me."    *Id*.    A

4

Second Step Response was issued on September 11, 2019, and Plaintiff signed for it on September 20, 2019.    The response was issued by Sandra Lampkin, Medical Site Administrator, and stated: "In response to your grievance you have been seen by the medical department as you have requested."    [23-2, p. 13].

Under the Prison Litigation Reform Act (PLRA): "No action shall be brought with respect to prison ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has made it clear that exhaustion is an absolute prerequisite and that the administrative remedies should be invoked in a timely manner and pursued to their conclusion.    *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).    The petitioner must have "pursue[d] the grievance remedy to conclusion"—substantial compliance with administrative procedures is not enough. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

In *Woodford,* the Court dismissed an untimely claim as unexhausted, holding "Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Id.* at 85. The exhaustion requirement of the PLRA attempts to reduce federal interference with the administration of state prisons.    To that end, it seeks to give prison officials time and opportunity to address complaints internally.    In a later case, the Court instructed, "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).    The Court stated, "All agree that no unexhausted claim may be considered." *Id*. at 219–20.

According to the Court, however, exhaustion is an affirmative defense, and the burden is on the defendants to establish that the prisoner's claims have not been exhausted. *Id.* at 216.

The doctrine of exhaustion requires compliance with an agency's deadlines. *Woodford*, 548 U.S. at 90. Moreover, where the available remedy procedure has more than one step, a prisoner has not exhausted his remedies until he has completed each one. *See Bargher v. White,* 928 F.3d 439, 447 (5th Cir. 2019); *Dillon v. Rogers*, 596 F.3d 260, 265–66 (5th Cir. 2010). Under MDOC's grievance procedures, a prisoner who does not receive a timely response to his initial ARP grievance is entitled to proceed to the second-step, and he must do so to exhaust his claim.

MDOC encourages informal attempts to resolve concerns in its policy: "Inmates are encouraged to continue to seek solutions to their concerns through informal means." [23-4, p. 3]. The policy also states, however, that to ensure their right to use the formal procedure, they must make their request in writing within a 30-day period after an incident has occurred. *Id*. If they later receive a satisfactory response through informal means, they may request to cancel the formal request. *Id.* There is a provision for that deadline to be waived, but the decision is left to the ARP Director. *See, e.g*., *Johnson v. Ford*, 261 Fed. App'x 752, 757 (5th Cir. 2008).

Defendant's first argument for dismissal is that Patterson failed to provide sufficient detail in his First Step letter so as to give Dr. Brazier fair notice of the claims against him. Dr. Brazier was not specifically named in the grievance and none of his

actions were described in detail.   The grievance generally complains that Patterson was

not being treated properly while at either WCCF or CMCF and that he needed treatment.

No actual medical personnel were named specifically, and the grievance does not state

what Dr. Brazier did or did not do to violate Plaintiff's rights.   "The level of detail

necessary in a grievance to comply with the grievance procedures will vary from system

to system and claim to claim, but it is the prison's requirements, and not the PLRA, that

define the boundaries of proper exhaustion."   *Jones*, 549 U.S. at 219.   In *Jones*, the

defendants argued that the prisoner had failed to name the officials whom he later

claimed were responsible for his injury.   The Court held that, as the prison's procedures

made no mention of naming particular officials, the court's rule imposing that as a

prerequisite to proper exhaustion was unwarranted.   *Jones*, 549 U.S. at 219.   In this case

the MDOC's grievance procedures, which, like the institution in *Jones*, are silent on that

point.   In an abundance of caution, the undersigned does not recommend that this case be

dismissed due to the lack of specificity.   The grievance may be found to be sufficient to

place Dr. Brazier on notice that Patterson was not pleased with his medical care.

This case may be dismissed on the Defendant's other argument, however.   After

*Woodford* and *Jones*, there can be no doubt that pre-filing exhaustion of prison grievance

processes is mandatory, and district courts have no discretion to excuse a prisoner's

failure to properly exhaust the prison grievance process before filing their complaint.

The Fifth Circuit has confirmed that "the PLRA pre-filing exhaustion requirement is

mandatory and non-discretionary," and that "district courts have no discretion to waive

the PLRA's pre-filing exhaustion requirement." *Gonzalez v. Seal,* 702 F.3d 785, 787-88

(5th Cir. 2012) (per curiam); *Moussazadeh v. Texas Dept. of Criminal Justice*, 703 F.3d

781, 788 (5th Cir. 2012) (quoting *Gonzalez*).    The Court specifically stated:

> ...  **District courts have no discretion** to excuse a prisoner's failure to
> properly exhaust the prison grievance process before filing their complaint.
> **It is irrelevant whether exhaustion is achieved during the federal
> proceeding.**    Pre-filing exhaustion is mandatory, and the case must be
> dismissed if available administrative remedies were not exhausted.

*Gonzalez*, 702 F.3d at 788 (*emphasis added*).

The Court in *Gonzalez* overruled prior case law giving district courts the discretion

to "excuse" an inmate's failure to exhaust before filing suit.  *Id.,* overruling *Underwood*

*v. Wilson*, 151 F.3d 292 (5th Cir. 1998).  The inmate in *Gonzalez* did as Patterson did: he

completed the ARP *after* filing his federal lawsuit.  The Court held that this was not

sufficient to comply with the PLRA's exhaustion requirements.  Patterson's case must be

dismissed if available administrative remedies were not exhausted, and, by filing his case

in this Court before he had received his Second Step response in CMCF-19-1279, Patterson

failed to exhaust the MDOC Grievance Procedures.  The only Defendant, Dr. Brazier, was

the physician at CMCF, so the CMCF grievance applied to his medical care.  The

Complaint must be dismissed for this reason.

Plaintiff is advised that claims regarding medical judgment do not violate the

United States Constitution, and it is probable that his complaints would be dismissed for

that reason in this case even had he exhausted his ARP remedies.  A claim concerning a

disagreement between an inmate and medical personnel regarding diagnosis and course

8

of treatment does not implicate the Eighth Amendment.   *Estelle v. Gamble*, 429 U.S. 97, 99-101 (1976).   Questions of medical judgment are not subject to judicial review. *Russell v. Sheffer,* 528 F.2d 318 (4th Cir. 1975).   Patterson's self-diagnosis of what medications or treatments he believed he needed states nothing more than a disagreement with the medical staff's decisions.

Plaintiff still has means to seek an informal resolution regarding his medical care by requesting another appointment and advising the physician of his concerns and symptoms.

For these reasons, it is the recommendation of the Magistrate Judge that Defendant Dr. William Brazier's Motion for Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies [23] be granted, and Patterson's complaint should be dismissed without prejudice.

Plaintiffs are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.   28 U.S.C. section 636; FED. R. CIV. P. 72(B); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 8th day of December 2020.


/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE